**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No 2:95-cr-00434 |
| | : | |
| WILLIAM EVANS, | : | |
| Defendant. | : | |

**<u>OPINION</u>**
**Motion for Early Termination of Supervised Release, ECF No. 187 - Denied**

**Joseph F. Leeson, Jr.** **October 5, 2026**
**United States District Judge**

## I. INTRODUCTION

On November 3, 1995, a jury in the United States District Court for the Eastern District of Pennsylvania convicted William Evans of three offenses: conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371 (Count One); armed bank robbery, in violation of 18 U.S.C. § 2113(d) (Count Two); and use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Three). He was subsequently sentenced, on February 5, 1996, to a total term of 372 months' imprisonment. The Court also imposed a restitution order of $49,578, and a $150 special assessment. Evans was released from prison on March 5, 2023, and has since served forty-three months of his supervised release and paid his court costs. He now seeks to terminate his supervised release seventeen months early. The United States Probation Office for the Eastern District of Pennsylvania, by and through Probation Officer Marques Middleton, opposes this request. For the following reasons, the Court denies the Motion.

## II. BACKGROUND

On August 15, 1995, Evans and an accomplice were charged by indictment with conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371 (Count One), armed bank robbery, in violation of 18 U.S.C. § 2113(d) (Count Two), and use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Three). *See* ECF No. 1; *see also Evans v. United States*, No. 95-434, 2020 WL 3287030, at *1 (E.D. Pa. June 18, 2020). On November 6, 1995, following a jury trial before the Honorable Robert S. Gawthrop III in the Eastern District of Pennsylvania, the jury convicted Evans on all three Counts. *See Evans*, 2020 WL 3287030, at *1; *see also* ECF No. 51. "[Evans] was subsequently sentenced [on February 5, 1996] to a term of imprisonment of sixty months on Count One, a concurrent term of imprisonment of 312 months on Count Two, and a consecutive term of imprisonment of sixty months for the 924(c) conviction in Count Three." *Evans*, 2020 WL 3287030, at *1; *see also* ECF No. 62.

In February 1996, Evans appealed his conviction to the Third Circuit Court of Appeals. *See* ECF Nos. 67–70. On October 7, 1996, the Third Circuit denied Evans's appeal and affirmed his conviction. *See* ECF No. 78. On October 1, 2001, Evans filed a *pro se* motion pursuant to 28 U.S.C. § 2255 ("2255 motion") to vacate his sentence. *See* ECF No. 101. On February 6, 2002, the Court dismissed Evans's motion as untimely because it was filed beyond Section 2255's one-year statute of limitations. *See* ECF No. 106. The Court did not issue a certificate of appealability, *see id.*, and the Third Circuit also denied issuance of a certificate of appealability, *see* ECF No. 118. Evans filed a *pro se*, what he entitled, "Motion Requests For Admission For An Illegal Sentence and unlawful detention Pursuant to Fed. R. Civ. P. 36(a) [sic]" on January 28, 2003. ECF No. 137. The Court denied this motion by an order dated May 16, 2013. *See* ECF No. 142.

On June 17, 2016, Evans filed a "protective" second or successive 2255 motion, along with an application to the Third Circuit for authorization to proceed on a second or successive 2255 motion, ECF No. 144, which the Third Circuit authorized, *see* ECF No. 155. The Court denied Evans's second or successive 2255 motion on June 18, 2020. *See generally Evans*, 2020 WL 3287030, at *1; *see also* ECF Nos. 175, 176.

On August 25, 2026, Evans filed a Motion for Early Termination of Supervised Release. *See* Mot., ECF No. 187. Evans was released from prison on or about March 5, 2023, whereupon he began serving his sixty-month supervised release term. *See id.* at 3. In the Motion, he argued that he has been an "active, productive member of society who has fully embraced a crime-free lifestyle." *Id.* at 4. After his release, he "obtained his Commercial Driver's License [("CDL")] through Career Link." *Id.* at 3–4. Evans "currently works as a CDL contractor for Alternate Driver Staffing, through which [he] obtains driving assignments in Delaware, Pennsylvania, New Jersey, and New York." *Id.* at 4. Previously, he "worked as a package deliverer for Amazon." *Id.* In support of the Motion, he pointed to his current employment, *see id.* at 3–4 (citing Ex. A, ECF No. 187-1), his mentoring through the "Recapturing Our Youth" program, which works with Drexel University's Neighborhood Community Partnership Program, *see* Mot. 4, and his nominations and awards for his participation in the workforce, *see* Ex. B, ECF No. 187-2 (Evans's nomination for the Pennsylvania Governor's Award, noting how Evans "completed his CAP program, obtain[ed] his certificate of completion on June 22nd, 2023, and started his CDL-A [truck driving license] classes on July 22nd, 2023"); Ex. C, ECF No. 187-3 (Evans's Montgomery County, Pennsylvania "Montco Works" Achievement Award, recognizing his "[e]xceptional [p]ersonal [e]ffort, [r]esilience and [c]ommitment in [c]ultivating [his] [c]areer

[j]ourney"). "Evans's ultimate goal is to start [a] dump truck business, [to be called] 'Big House Dump Trucks,' for which he is still seeking grants to obtain trucks." Mot. 4.

Evans alleges that he "has maintained full compliance of his supervision conditions[.]" *Id.* at 6. He paid his court costs in full and has served forty-threee months of his supervised release term without any incident. *See id.* at 3. Evans is also "currently serving post-incarceration supervision terms in both federal and state court in Pennsylvania." *Id.* at 4. Evans argues that "[r]eporting to two separate supervision offices interferes with [] Evans's job responsibilities as a truck driver[,]" without providing additional detail. *Id.* Evans also hopes to travel outside of the Eastern District "unencumbered by the travel preauthorization process." *Id.*

The United States Probation Office, by and through Probation Officer Marques Middleton, opposes the Motion for Early Termination "primarily based upon [] Evans's history of violence." *Id.* at 1 n.1.

## III. LEGAL STANDARD – Early Termination of Supervised Release

After a defendant has served at least one year of supervised release, a district court has the discretion to terminate the remainder of the term "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *United States v. Melvin*, 978 F.3d 49, 53 (3d Cir. 2020). In weighing such a request, a district court must consider the factors set forth in 18 U.S.C. § 3553(a).[1] *See* 18 U.S.C. §

---

[1] Section 3553(a) directs the court to "impose a sentence sufficient, but not greater than necessary . . .

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

3583(e). "District courts are not required to make specific findings of fact with respect to each of these factors; rather, 'a statement that [the district court] has considered the statutory factors is sufficient.'" *Melvin*, 978 F.3d at 52–53 (quoting *United States v. Gammarano*, 321 F.3d 311, 315–16 (2d Cir. 2003)). The court's level of discretion is "considerable." *United States v. Fattah*, No. 23-1064, 2023 WL 4615300, at *2 (3d Cir. July 19, 2023) (citing *United States v. Sheppard*, 17 F.4th 449, 457 (3d Cir. 2021)).

Effective November 1, 2025, the United States Sentencing Commission released a policy statement clarifying that courts considering requests for early termination should also, in addition to weighing the considerations under § 3583(e)(1), engage in an "individualized assessment of the need for ongoing supervision . . . following consultation with the government and the probation officer." U.S.S.G. § 5D1.4(b). The Commission provided guidance on the same, indicating that courts "may wish to consider" factors relating to the defendant's patterns of behavior thus far on supervision, and the defendant's predicted behavior beyond the period of supervision. *Id.* at cmt. n.1(B).[2]

---

18 U.S.C. § 3553(a)(2). In determining the sentence, the court must consider, *inter alia*: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the kinds of sentences available;" (3) "the need to avoid unwarranted sentence disparities among [similarly situated] defendants;" and (4) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553.

[2] The Sentencing Commission gave the following commentary regarding Section 3583(e)(1):

> When determining whether to terminate the remaining term of supervised release under subsection (b), the court may wish to consider such factors as:
>
> (i) any history of court-reported violations over the term of supervision;
> (ii) the ability of the defendant to lawfully self-manage (*e.g.*, the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);
> (iii) the defendant's substantial compliance with all conditions of supervision;

Courts have before suggested that "early termination of supervised release under § 3583(e)(1) should occur only when the sentencing judge is satisfied that 'new or unforeseen circumstances' warrants it." *United States v. Davies*, 746 F. App'x 86, 89 (3d Cir. 2018) (referencing *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)). However, the Third Circuit Court of Appeals has made clear that this is not a firm rule or requirement. *See Melvin*, 978 F.3d at 53 ("disavow[ing] any suggestion that new or unforeseen circumstances must be shown"). "In other words, extraordinary circumstances *may* be sufficient to justify early termination of a term of supervised release, but they are *not necessary* for such termination." *Id.* (emphasis modified) (citing *United States v. Murray*, 692 F.3d 273, 279 (3d Cir. 2012)). This is because, where a district court pronounces a sentence that is "sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), a defendant's motion for early termination of supervised release leads the court to ask whether "something [has] changed in the interim that would justify an early end to a term of supervised release," *Melvin*, 978 F.3d at 53.

The defendant always bears "the burden of establishing that early termination of his supervised release is merited." *United States v. Allston*, No. 99-409, 2021 WL 4262315, at *2 (E.D. Pa. Sept. 20, 2021) (citing *United States v. McDowell*, 888 F.2d 285, 291 (3d Cir. 1989)).

---

> (iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;
> (v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and
> (vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

*Id.* at cmt. n.1(B).

"[T]he primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them." *Murray*, 692 F.3d at 280 (quoting *United States v. Albertson*, 645 F.3d 191, 197 (3d Cir. 2011)). Supervised release is supposed to fulfill "rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000).

## IV. ANALYSIS

The Court, after considering the relevant factors under 18 U.S.C. § 3553(a), concludes that early termination of Evans's supervised release would not be in the interest of justice. Although the Court need not make specific findings as to each § 3553(a) factor, *see Melvin*, 978 F.3d at 52–53, the Court does so for the sake of completeness.

Initially, "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), do not support terminating Evans's supervised release seventeen months early. The offenses—conspiracy to commit bank robbery, armed bank robbery, and use of a firearm during a crime of violence—are serious, violent offenses. The seriousness of these offenses is reflected in the sentence, which was 372 months (thirty-one years) of incarceration, followed by sixty months (five years) of supervised release. Evans served twenty-seven years of the thirty-one-year sentence. *See* Mot. 3. Evans has two prior state criminal convictions for robbery, along with convictions of carrying a firearm in public and carrying a firearm without a license, conspiracy, and other theft charges. *See* Presentence Investigation Rpt. ("PSR") ¶¶ 38–39. The seriousness of the three offenses here and Evans's criminal history disfavor terminating Evans's supervised release early. *See United States v. Khelil-Cherfi*, No. 15-599-02, 2026 WL 2336394, at *4 (E.D. Pa. Aug. 12, 2026) (declining to terminate supervised

release because the defendant had "committed a series of ten violent robberies—several involving the use of a firearm").

As for the need that the sentence "afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2)(B)–(C), the Court reiterates that Evans's crimes were serious and justified a sentence exceeding three decades of incarceration. Although Evans has not violated the terms of his supervised release, and appears to be on the straight and narrow, Probation Officer Middleton is concerned about Evans's history of violence. The Court shares this concern as Evans had two prior state criminal convictions for robbery and a conviction for carrying a firearm in public and carrying a firearm without a license, *see* PSR ¶¶ 38–39, but was not deterred by the state sentences and went on to commit the offenses in this action. There is also a need to protect the public from Evans because of his repetitive history of committing robbery and possessing a firearm. *See United States v. Toney*, 2026 WL 2059070, at *3 ("[R]elief may degrade the ability of the sentence to afford adequate deterrence to criminal conduct."); *see also United States v. Volkert*, No. 22-172, 2026 WL 325666, at *4 (E.D. Pa. Feb. 6, 2026) ("[T]he fact of compliance may very well mean that supervision is serving its deterrent and rehabilitative purposes and continuation of it to full term will achieve its desired effects on the supervised individual and community."). Accordingly, these factors also weigh against terminating supervised release early. Keeping the total supervised release term will provide "some support against [further criminal conduct] happening." *United States v. Thena*, No. 12-133, 2025 WL 2165937, at *2 (E.D. Pa. July 30, 2025).

Also, the sentencing range established by the Sentencing Commission, *see* 18 U.S.C. § 3553(a)(4), weighs against terminating Evans's supervised release early, or is neutral at best. At

the time of his sentencing, Evans had a criminal history category of VI, and a total offense level of 34. *See* PSR ¶ 68. The Guideline range was 262 to 327 months' imprisonment. *See id.* Count Three also carried "a mandatory [sixty] months consecutive sentence." *Id.* Furthermore, the Guideline range for supervised release was at least three years but not more than five years. *See id.* ¶ 72. Evans's sentence of 312 months' imprisonment on Counts One and Two and a consecutive sixty months' imprisonment on Count Three, falls near the bottom of the Guideline range. His sixty-month sentence of supervised release also falls within the Guideline range. Considering that his imprisonment term was at the lower end of the Guidelines range, especially when viewed alongside the seriousness of the offenses, the Court's sentence of sixty months of supervised release was reasonable and should remain in effect. *See Thena*, 2025 WL 2165937, at *2 ("[N]othing in the Sentencing Guidelines suggests that his term of supervised release is too long.").

Yet, there is less need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, *see* 18 U.S.C. § 3553(a)(6). The Guidelines permitted a sentence of at least three years of supervised release. Evans has served over three-and-a-half years of his supervised release sentence. There is less risk of "sentence disparities among defendants with similar records" in terminating Evans's supervised release. *Toney*, 2026 WL 2059070, at *3.

As to "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), the Court imposed $49,578.00 in restitution, and Evans has only satisfied $3,668.00 of his restitution. Since Evans has not paid his imposed restitution in full, this factor weighs against terminating his supervised release early. *See United States v. Boyle*, No. 16-271, 2023

WL 2601176, at *2 (E.D. Pa. Mar. 22, 2023) (denying a motion for early termination of supervised release where the defendant had not paid his restitution obligations).

The Court finds that early termination of Evans's supervised release is not warranted by his conduct or the interests of justice. *See Melvin*, 978 F.3d at 52. It is commendable that Evans obtained his CDL license and has been working as truck driver, with the ambition to start his own dump truck business. Although the Court acknowledges that Evans mentors area youth, was nominated for the Governor's Award, and won an Achievement Award from the MontCo Works Workforce Development Board, *see* Mot. 4, all of which are laudable, the Court also notes that the seriousness of the offenses, his failure to make complete restitution, and Evans's criminal history weigh in favor in maintaining the full sixty-month sentence of supervised release. Broadly, he appears to be doing well following his release from custody. Nevertheless, doing well alone is not enough to terminate his supervised release early. While Evans has complied with the conditions of his supervised release, and has not engaged in new criminal activity, this is what he is *supposed to do* on supervised release. Though Evans's "good behavior and constructive and rehabilitative actions are noteworthy," *United States v. Miller*, 23-2932, 2024 WL 4971948, at *3 (3d Cir. Dec. 4, 2024), "good behavior, without more, is insufficient to justify early termination." *Thena*, 2025 WL 2165937, at *2. "Society is better protected if [Evans] completes the full term of his supervised release under the watchful eye of his probation officer." *Allston*, 2021 WL 4262315, at *2.

Moreover, Evans has not made a showing of any "particular hardship caused by the conditions of his supervision." *United States v. Serrano*, 12-452, 2025 WL 3217749, at *1 (E.D. Pa. Nov. 18, 2025). To the extent Evans maintains that reporting to state and federal supervision offices interferes with his job responsibilities, he does not provide how reporting interferes with

these responsibilities, beyond ostensibly being cumbersome. The fact that he works in Delaware, Pennsylvania, New Jersey, and New York only supports the Court's conclusion that reporting to the federal supervision office is not cumbersome because he is not traveling excessively long distances to do his job. He has fulfilled all reporting obligations and can continue to do so. Thus, Evans's conduct and the interest of justice do not support terminating his supervised release seventeen months early. *See United States v. Stiso*, No. 14-484, 2021 WL 1291648, at *3 (D.N.J. Apr. 6, 2021) (declining to terminate a defendant's supervised release eighteen months early when the defendant "provided no reason justifying early termination of supervised release other than compliance with the conditions of his supervision"); *see also Thena*, 2025 WL 2165937, at *2 (acknowledging that the defendant did not "demonstrate[] that the conditions of supervised release interfere with his life in a problematic way"). He also does not present any unforeseen or extraordinary circumstances evidencing a need for early termination. *See Melvin*, 978 F.3d at 53 (explaining that extraordinary circumstances may be sufficient to justify early termination). Rather, Evans is active participant in his community, which will hopefully continue for his remaining seventeen months of supervised release.

In sum, the Court remains satisfied that the initial term of sixty months of supervised release is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Evans's "continued supervision at the minimum level currently required will not impede [his] continued progress or serve any punitive function but[ ]will assist him in continuing his positive transition from incarceration and his development into a fully productive and law-abiding member of society." *United States v. Salami*, No. 23-13, 2026 WL 735340, at *2 (E.D. Pa. Mar. 16, 2026).

## V. CONCLUSION

For the foregoing reasons, the Court denies Evans's Motion for Early Termination of Supervised Release.

A separate Order follows.

BY THE COURT:
*/s/ Joseph F. Leeson, Jr* .
JOSEPH F. LEESON, JR.
United States District Judge